IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SHIRLEY GROSS,

    Plaintiff,

    v.

PFIZER, INC., *et. al*,

    Defendants.

Civil Action No. 10-CV-00110-AW

## **MEMORANDUM OPINION**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Pfizer Inc. ("Pfizer"), Wyeth LLC, Wyeth Pharmaceuticals Inc. (collectively "Wyeth"), and Schwarz Pharma, Inc. ("Schwarz"). Doc. No. 56. The Court has reviewed the motion and all supporting documents and finds no hearing is necessary. *See* MD. LOC. R. 105.6 (D. Md. 2010). For the reasons articulated below, the Court GRANTS Defendants' motion.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

The facts relevant to this motion are few and undisputed. Plaintiff filed this action as a result of injuries she suffered from ingesting the prescription drug metoclopramide. Plaintiff stipulates that the drugs she consumed are a generic form of metoclopramide manufactured by Defendant Pliva USA, Inc., and that she has not ingested any metoclopramide product manufactured by Defendants Pfizer, Wyeth or Schwarz. *See* Doc. No. 54. Plaintiff nonetheless filed suit against the latter three on theories of negligence, breach of warranty, strict product liability, and misrepresentation. Those Defendants now argue that summary judgment should be

1

granted in their favor on all claims because Maryland law only allows drug defect claims to proceed against the manufacturer whose drug caused the injury. *See* Doc. No. 56.[1]

## II. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. ANALYSIS

Defendants rely primarily on *Foster v. Am. Home Prods. Corp.*, 29 F.3d 165 (4th Cir. 1994), which held that, in drug-defect cases, Maryland law only permits plaintiffs to pursue

---

[1] Defendants also argue that all claims should be dismissed against Pfizer because it did not acquire Wyeth until after the events that form the basis for Plaintiff's claims. The Court need not resolve this issue, because it agrees with Defendants' other basis for dismissal.

claims against the manufacturer of the drug that caused their injury. *Id.* at 167. The facts of *Foster* are strikingly similar to those of the case at bar. Plaintiffs brought suit against a brand-name manufacturer of a drug that harmed their child, even though they conceded that the child had only ingested the generic form produced by a different manufacturer. *See id.* Like the Plaintiff in this case, the *Foster* plaintiffs asserted classic products-liability theories (negligence, strict liability and breach of warranty) as well as negligent misrepresentation. *Id.* Also like the Plaintiff in this case, they argued that the misrepresentations of the brand-name manufacturer about the safety of its drug were duplicated by the generic manufacturer, and that such duplication was foreseeable in light of the federal regulatory regime for drug safety. *Id.* at 168-69.

*Foster* squarely considered and rejected each of these arguments and legal theories. First, *Foster* treated all of the claims, including misrepresentation, as products-liability claims, subjecting them to the requirement that "a plaintiff seeking to recover for an injury by a product [must] demonstrate that the defendant manufactured the product at issue." *Id.* at 168. The court was "unable to see any validity in this distinction" between the product-liability claims and the misrepresentation claim, and it was "persuaded that the Maryland courts would reject this effort to circumvent the necessity that a defendant be shown to have manufactured the product that caused an injury prior to being held liable for such injury." *Id.*

Furthermore, *Foster* held that plaintiffs' misrepresentation claim failed because the brand-name manufacturer did not owe a tort-law duty to warn generic-drug consumers about the risks of the generic drug. *See id.* at 171. The court indicated that "to impose a duty in the circumstances of this case would be to stretch the concept of foreseeability too far," because there was "no [special] relationship between the parties to this case." *Id. Foster* also concluded

3

that the federal drug safety regime did not alter the result, because it "does not evidence Congressional intent to insulate generic drug manufacturers from liability . . . or to otherwise alter state products liability law . . . [or] to create liability of a name brand manufacturer when another manufacturer's drug has been consumed." *Id.* at 170.

Plaintiff makes no effort to distinguish *Foster*, but instead advances two arguments in an effort to show that the common law has evolved so as to render *Foster*'s interpretation of Maryland law outdated. First, Plaintiff argues that recent Maryland decisions addressing the element of duty in concealment and misrepresentation cases have broadened the concept of foreseeability. *See Rhee v. Highland Dev. Corp.*, 958 A.2d 385 (Md. Ct. Spec. App. 2008); *Diamond Point Plaza, Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932 (Md. 2007). The Court is not convinced that these cases signal a major change in Maryland's general approach to foreseeability and duty. Even if they did suggest such a change, *Rhee* and *Diamond Point* are not product-liability cases. Thus, *Foster*'s method of analysis—treating claims based on drug-safety misrepresentation as product-liability claims and applying the product-liability requirement that the plaintiff show that the defendant manufactured the drug—is not affected by *Rhee* and *Diamond Point*.

Furthermore, Plaintiff has presented no justification for this Court to revisit the policy judgments made by the Fourth Circuit in *Foster*. As numerous Maryland cases recognize, deciding whether a duty exists or not involves multiple factors; Maryland courts "have not . . . historically embraced the belief that duty should be defined mainly with regard to foreseeability." Ultimately, duty presents "a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine v. Crews*, 955 A.2d 769, 783,

787 (Md. 2008). *Foster*'s decision that brand-name manufacturers owe no duty to generic consumers was based in large part on policy judgments specific to the prescription-drug context:

> Name brand manufacturers undertake the expense of developing pioneer drugs, performing the studies necessary to obtain premarketing approval, and formulating labeling information. Generic manufacturers avoid these expenses by duplicating successful pioneer drugs and their labels. Name brand advertising benefits generic competitors because generics are generally sold as substitutes for name brand drugs, so the more a name brand drug is prescribed, the more potential sales exist for its generic equivalents. There is no legal precedent for using a name brand manufacturer's statements about its own product as a basis for liability for injuries caused by other manufacturers' products, over whose production the name brand manufacturer had no control. This would be especially unfair when, as here, the generic manufacturer reaps the benefits of the name brand manufacturer's statements by copying its labels and riding on the coattails of its advertising.

*Foster*, 29 F.3d at 170. Thus, adjustments in the common law approach to duty and foreseeability in other factual contexts do not dictate similar changes in the assignment of duty in prescription-drug cases. Insofar as such a change should be made at all, it must be made by the Fourth Circuit or the Maryland Court of Appeals, not by the District Court second-guessing binding appellate precedent.

Plaintiff's second argument for a change in the common law is that a single case by an intermediate appellate court in California rejected *Foster* and held that generic consumers may proceed with misrepresentation claims against brand-name manufacturers. *See Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d. 299, 315-18 (Cal. App. 2008). However, not only did *Conte* apply the common law of a state other than Maryland (*i.e.*, California), but it "runs counter to the overwhelming majority of case law" across the country. *Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1344 (M.D. Fla. 2010). Thus, it is exceedingly unlikely that the Maryland Court of Appeals, were it to address the question presented in this case, would side with *Conte* rather than *Foster* and the almost universal holding of both state and federal courts.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. A separate Order will follow.

   November 9, 2010                                          /s/
          Date                                              Alexander Williams, Jr.
                                                              United States District Judge